UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:24-CR-27-SDJ |
| | § | |
| JEFFREY PAUL CORNWELL (6) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jeffrey Paul Cornwell's Second Notice of Opposition to a Trial Continuance and Request for Severance, (Dkt. #121), and the Government's response. (Dkt. #123). After considering the Parties' filings, record, and applicable law, the Court concludes the motion should be **DENIED**.

### I. BACKGROUND

On February 14, 2024, a federal grand jury in the Eastern District of Texas indicted Cornwell on two conspiracy counts. (Dkt. #1). According to the indictment, Cornwell conspired and participated in a multi-state drug and money laundering scheme. Based on this alleged conduct, the indictment charges Cornwell with (1) conspiracy to possess with intent to manufacture and distribute a controlled substance, in violation of 21 U.S.C. § 846, and (2) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Dkt. #25).

On February 29, 2024, Cornwell was arrested and made his initial appearance. (Dkt. #121 at 1). At that time, he was detained. (Dkt. #121 at 1). Following his first appearance, Cornwell's codefendants filed multiple motions delaying this proceeding. First, a co-defendant filed the first granted continuance motion on April 29, 2024. (Dkt. #87). Cornwell did not oppose that continuance. Second, a co-defendant filed

another continuance on June 10, 2024. (Dkt. #95). Cornwell opposed this motion. Even so, the Court granted the continuance. (Dkt. #102). Finally, the Government requested another continuance on September 3, 2024. (Dkt. #118). Cornwell opposes this continuance. (Dkt. #121).

Invoking his rights under the Speedy Trial Act and the Sixth Amendment, Cornwell maintains that this case is not complex and additional continuances are unwarranted. (Dkt. #121 at 2). Cornwell further claims the Government is unwilling or unable to go to trial, and that the Government's request for a continuance based in part on the discovery of new evidence is exaggerated because the evidence has purportedly been available for several months. (Dkt. #121 at 2). On these bases, Cornwell alleges the Government's delay is prejudicing him. (Dkt. #121 at 2–3). For its part, the Government explains that this case concerns a complex, multi-state conspiracy involving several marketers, pharmacists, and healthcare providers who dispensed controlled substances online to thousands of customers nationwide. (Dkt. #123 at 1–2). The Government further contends that during recent months it has executed multiple search warrants that resulted in extensive discovery. (Dkt. #123 at 2). In the Government's view, the nature of this case and the recent collection of substantial discovery merit a further continuance of trial.

In conjunction with his speedy-trial request, Cornwell requests severance from his codefendants. (Dkt. #121 at 6–7). The Government opposes severance, contending that Cornwell has not overcome the "strong interest" that courts have in avoiding multiple trials for defendants charged together. (Dkt. #123 at 5).

The Court will address Cornwell's speedy-trial and Sixth Amendment arguments first, followed by his request for severance.

## II. DISCUSSION

### A. Defendant's Rights Under the Speedy Trial Act Were Not Violated.

The Speedy Trial Act of 1974 ("Act") requires that a criminal defendant's trial commence "within [seventy] days after he is charged or makes an initial appearance, whichever is later, *see* § 3161(c)(1), and entitles him to dismissal of the charges if that deadline is not met, § 3162(a)(2)." *Bloate v. United States*, 559 U.S. 196, 198–99, 130 S.Ct. 1345, 176 L.Ed. 2d 54 (2010) (cleaned up). The Act excludes "delay resulting from other proceedings concerning the defendant" in its calculations. 18 U.S.C. § 3161(h)(1). Additionally, "delay resulting from a continuance granted by the district court may be excluded [from a Speedy Trial Act calculation] if the district court makes the findings required by 18 U.S.C. 3167(h)(7)." *Bloate*, 559 U.S. at 199 (cleaned up). The defendant bears the burden of proving violations of the Act. 18 U.S.C. § 3162(a)(2).

Cornwell insists his rights under the Act were violated because he purportedly has been awaiting trial for 146 days. (Dkt. #121 at 4). Cornwell is mistaken.

As the Supreme Court and the Fifth Circuit have made clear, when construing a statute, courts "must first determine whether the statutory text is plain and unambiguous" and if it is, the statute must be applied "according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009) (citations omitted); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) ("The preeminent canon of statutory interpretation

requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)); *United States v. Sharp*, 62 F.4th 951, 953 (5th Cir. 2023) ("The text at issue is unambiguous, and so our inquiry begins and ends with the text.") (internal quotation marks and citation omitted).

The Act's language is unambiguous and provides that trial must begin within seventy days of the later of (1) "the filing date . . . of the information or indictment," or (2) "from the date the defendant has appeared before a judicial officer of the court in which such charge is pending[.]" 18 U.S.C. § 3161(c)(1). The Fifth Circuit has consistently applied the Act's plain language this way. *See United States v. Gordon*, 93 F.4th 294, 302–04 (5th Cir. 2024) (applying the Speedy Trial Act's seventy-day language); *United States v. Burrell*, 634 F.3d 284, 286–88 (5th Cir. 2011) (same).

Cornwell's theory that a pretrial delay occurred is untethered to the Act's text. The Act explicitly starts the clock from the later of the filing date of the information or indictment or "from the date the defendant has appeared before a judicial officer of the court in which such charge is pending." 18 U.S.C. § 3161(c)(1).

So, applying Section 3161(c)(1) as written, the Act's clock did not commence until Cornwell appeared in the Eastern District of Texas on February 29, 2024. Cornwell's contrary argument that the clock began on February 15 is mistaken because February 29 is the later date and thus the triggering event under the Act.

The relevant triggering event matters because Cornwell's seventy-day window has not expired. To the contrary, only sixty-two days have tolled. *See* (Dkt. #88, #102) (calculating the relevant days between February 29, 2024, April 30, 2024, and June 27, 2024). The Act exempts delays "resulting from a continuance" based on a judge's conclusion that the "ends of justice served by taking such [a delay] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (cleaned up). These delays are known as ends-of-justice continuances. The Supreme Court has made clear that the ends-of-justice provision "gives the district court discretion—within limits and subject to specific procedures— to accommodate limited delays for case-specific needs." *Zedner v. United States*, 547 U.S. 489, 498–99, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006). And the Fifth Circuit has explained that "the only requirements for an ends-of-justice continuance are that the order memorializing the continuance indicate when the motion was granted, and that the reasons stated be and can be fairly understood as being those that actually motivated the court at the time it granted the continuance." *Gordon*, 93 F.4th at 305 (5th Cir. 2024) (citing *United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002)).

Cornwell agreed to one continuance but opposed the second. The Court, in granting the continuances, considered the factors under 18 U.S.C. § 3161(h)(7)(B). (Dkt. #88, #102). The Court's orders also provided the reasons for granting the continuances. *See Gordon*, 93 F.4th at 305. As a result, the delays were excludable time under the Act. On this record there has been no violation of the Speedy Trial Act.

**B. Defendant's Rights Under the Sixth Amendment Were Not Violated.**

The Sixth Amendment has been described as "the heartland of constitutional criminal procedure." Akhil Reed Amar, *Sixth Amendment First Principles*, 84 GEO. L.J. 641, 641 (1996). It affords "the accused" "the right to a speedy . . . trial." U.S. CONST. amend. VI.[1] As the Fifth Circuit has observed, "[b]ecause no two cases are the same and because 'the ordinary procedures for criminal prosecution are designed to move at a deliberate pace,' the 'right of a speedy trial is necessarily relative' and circumstance-specific." *United States v. Ansari*, 48 F.4th 393, 397 (5th Cir. 2022) (quoting *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). The Fifth Circuit has also noted that "[i]t will be the unusual case, however, where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *Bieganowski*, 313 F.3d at 284.

In evaluating whether a defendant has been denied his Sixth Amendment speedy-trial right, a court considers the factors first laid out by the Supreme Court in *Barker v. Wingo*: (1) the length of the delay, (2) the reason for the delay, (3) a defendant's diligence in asserting the right, and (4) prejudice to a defendant. 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The first factor, the delay's length, is a "triggering mechanism" for determining whether a court must examine the other *Barker* factors. *United States v. Serna-Villareal*, 352 F.3d 225, 230 (5th Cir. 2003).

---

[1] The Speedy Trial Act is "distinct from [a defendant's] constitutional speedy-trial rights." *United States v. Lamb*, No. 5:19-CR-25, 2020 WL 6482977, at *5 (E.D. Tex. Aug. 10, 2020), *report and recommendation adopted*, No. 5:19-CR-25, 2020 WL 5269535 (E.D. Tex. Sept. 4, 2020).

Whether a delay is long enough to trigger examining the remaining *Barker* factors is a case-specific inquiry, but delay exceeding one year generally meets this threshold requirement. *See id.*

When balancing the *Barker* factors, courts weigh the first three factors against any prejudice a defendant has suffered because of prosecutorial delay. *Id.* at 230–31. A defendant has the burden to show prejudice. *Id.* at 230. And unless the first three *Barker* factors weigh so heavily in the defendant's favor that prejudice is presumed, the defendant must demonstrate "actual prejudice" to prove his speedy trial rights were violated. *Id.* at 231.

### i. Length of Delay

As to the threshold inquiry under *Barker*, "[a] delay of less than one year will rarely qualify as 'presumptively prejudicial' for purposes of triggering the *Barker* inquiry." *Cowart v. Hargett*, 16 F.3d 642, 646 (5th Cir. 1994). And "any delay caused by [the defendant's] own requests for continuances should be discounted." *United States v. Jackson*, 549 F.3d 963, 970 (5th Cir. 2008).

Here, since Cornwell first appeared in the Eastern District of Texas, he agreed to the initial continuance. *See* (Dkt. #88, #121 at 4). As a result, the delays caused by his accepted continuance are discounted. In other words, he cannot contribute to his trial's delay and then claim a constitutional violation occurred.

Cornwell has also been indicted for less than a year. Because Cornwell has been indicted for less than the period that typically qualifies as "presumptively prejudicial," he is not prejudiced. Thus, *Barker*'s threshold inquiry has not been triggered. The delay therefore is not "presumptively prejudicial," and weighs against

Cornwell. *See Cowart*, 16 F.3d at 646 ("A delay of less than one year will rarely qualify as 'presumptively prejudicial.'").

### ii. Reasons for Delay

Although no *Barker* factor alone is dispositive, the second one—the reason for the delay—is the "flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). When applying this factor, different reasons for delay are assigned different weights. *Barker*, 407 U.S. at 531. Bad-faith prosecutorial delays designed "to hamper the defense" are "weighted heavily against the government." *Id.* Delays caused by "negligence or overcrowded courts," however, are weighted "less heavily." *Id.* And other delays, such as those attributable to the defendant, do not count against the government. For example, a defendant can contribute to delay by asking for continuances, and "if he later claims a speedy trial violation, he 'will not be heard to complain of a lapse of time attributable to continuances he sought and received from the trial court.'" *United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020) (quoting *Nelson v. Hargett*, 989 F.2d 847, 852 (5th Cir. 1993)); *see also Jackson*, 549 F.3d at 970 (same).

According to Cornwell, the Government has stalled discovery production, procrastinated plea negotiations, and delayed examining new evidence. But these conclusory assertions are contradicted by the record, which shows that the trial continuances have been driven by the complexity of the case and the associated extensive discovery. In this regard, the Court notes that Cornwell's codefendants asked for the first and second continuances precisely because of the amount of discovery material in this matter. Cornwell was unopposed to the first such

8

continuance. The Government now seeks a continuance for similar reasons, citing the discovery of new evidence, retrieved following the execution of post-indictment search warrants, that has changed the Government's case analysis. Given the foregoing, Cornwell's unsupported assertions of deliberate delay by the Government are unpersuasive.

In sum, this factor weighs against Cornwell's claim that his rights under the Sixth Amendment are in jeopardy.

### iii. Diligence in assertion of the speedy-trial right

Under the third factor, the "defendant's assertion of his speedy trial right" receives "strong evidentiary weight," while "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Gordon*, 93 F.4th at 308 (citing *Barker*, 407 U.S. at 531–32). Thus, a "mere assertion of the right does not automatically cause this factor to weigh in a defendant's favor, and a defendant who waits too long to assert his right will have his silence weighed against him. *Id*. In conducting this inquiry, courts "assess[] the totality of the proceedings in considering the amount of time that passed before a defendant should have raised his speedy trial rights." *Id*. (quoting *United States v. Parker*, 505 F.3d 323, 330 (5th Cir. 2007)).

Although Cornwell asserts his right to a speedy trial, he has not diligently pursued that right. Indeed, Cornwell acquiesced in the first continuance of this case. His consent contradicts his assertions of diligence. *See Duran-Gomez*, 984 F.3d at 378 ("At the very least, a defendant should manifest his desire to be tried promptly.") (quotation omitted). Along with his acquiescence, Cornwell did not assert his right to

a speedy trial until June 2024. (Dkt. #96). Thus, while Cornwell has twice invoked his speedy-trial right, the fact that he waited several months to assert that right undermines his claim of diligence. *See Duran-Gomez*, 984 F.3d at 378 ("If a defendant waits too long to assert his right, his 'silence will be weighed against him.'") (citing *Parker*, 505 F.3d at 329–30). This factor provides little support for Cornwell's speedy-trial complaint.

### iv. Prejudice from delay

Taken together, the first three *Barker* factors do not weigh in Cornwell's favor. As a result, Cornwell is not entitled to a presumption of prejudice and must show actual prejudice. *Serna-Villareal*, 352 F.3d at 231. He has not done so.

The Supreme Court has identified three interests protected by the speedy-trial guarantee: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last." *Id*. As to the first interest, "[t]he time spent in jail awaiting trial has a detrimental impact on the individual." *Id*. Concerning the second interest, even absent incarceration, a defendant "is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Id*. at 533. But courts "regard none of the [*Barker*] factors ... as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id*. Because Cornwell has not shown that any of these interests have been compromised by the continuances in this case, he has also necessarily failed to demonstrate actual prejudice.

The Court concludes that no *Barker* factors support Cornwell's motion and therefore his Sixth Amendment right has not been compromised.[2]

## C. Cornwell Will Not Be Severed from His Codefendants.

In general, "persons indicted together should be tried together, especially in conspiracy cases." *United States v. Hankton*, 51 F.4th 578, 608 (5th Cir. 2022), *cert. denied,* 143 S.Ct. 839, 215 L.Ed. 2d 82 (2023). Federal Rule of Criminal Procedure 8(b) allows the joinder of multiple defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). Rule 14, however, permits severance when "joinder of offenses or defendants … appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a).

The Fifth Circuit has admonished that its "caselaw does not reflect a 'liberal attitude toward severance.'" *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018) (citing *United States v. McRae*, 702 F.3d 806, 822 (5th Cir. 2012)). Indeed, "severance is the exception," not the rule, *Ledezma-Cepeda*, 894 F.3d at 690, and is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed. 2d 317 (1993). "This presumption stems from the belief that … joint trials 'promote efficiency' and protect against the 'inequity of inconsistent

---

[2] Cornwell did not assert Federal Rule of Criminal Procedure 48 as a basis for relief. In any event, any potential arguments by Cornwell of undue delay under Rule 48 would lack merit for the same reasons that his Speedy Trial Act and Sixth Amendment claims fail.

verdicts.'" *Ledezma-Cepeda*, 894 F.3d at 690 (quoting *Zafiro*, 506 U.S. at 537).

As a result, "to surmount this heavy presumption, a defendant must show that (1) the joint trial prejudice[s] him to such an extent that the district court [can] not provide adequate protection; and (2) the prejudice outweigh[s] the government's interest in economy of judicial administration." *Id.* (internal quotation marks and citation omitted); *see also id.* ("[g]eneric allegations of prejudice will not suffice…"). In other words, a defendant must prove a "specific compelling prejudice" resulting from joinder. *United States v. Hertzberg*, No. 6:22-CR-003-JDK-JDL, 2023 WL 5943115, at *2 (E.D. Tex. Sept. 12, 2023) (citing *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007)).

Additionally, in conspiracy cases, the Fifth Circuit "generally favor[s] specific instructions over severance." *Ledezma-Cepeda*, 894 F.3d at 690. "That is because it is generally presumed that juries follow the instructions given to them by the district court and are capable of compartmentalizing the evidence against each defendant." *Id.* (cleaned up). So even when the evidence in a case is "both massive and complex," the court can "explicitly instruct[ ] the jury to consider each offense separately and each defendant individually." *Hertzberg*, 2023 WL 5943115, at *3 (quotation omitted). Thus, "[l]imiting instructions such as these are generally sufficient to prevent the threat of prejudice resulting from unsevered trials." *Id.*

Cornwell does not come close to meeting the high standard for severance. He provides no evidence of any prejudice to him associated with being joined with his codefendants for trial in this conspiracy case, much less a "specific compelling

prejudice" resulting from joinder. Likewise, Cornwell provides no argument that overcomes the Fifth Circuit's presumption against severance. *See Ledezma-Cepeda*, 894 F.3d at 690 ("severance is the exception."). Rather, Cornwell asserts only "generic allegations of prejudice" that are insufficient on their face. *Id.*

### III. CONCLUSION

For these reasons, it is **ORDERED** that Defendant Jeffrey Paul Cornwell's Second Notice of Opposition to a Trial Continuance and Request for Severance, (Dkt. #121), is **DENIED**. An order considering the Government's Motion for Continuance, (Dkt. #50), will follow separately.

**So ORDERED and SIGNED this 26th day of September, 2024.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE